# United States Court of Appeals

## For the First Circuit

No. 09-1769

EMMA VELÁZQUEZ RODRÍGUEZ; RICARDO RÍOS,

Plaintiffs, Appellants,

v.

MUNICIPALITY OF SAN JUAN; JORGE SANTINI, Mayor of San Juan, in
his official and personal capacities; ZENAIDA DÍAZ, former
Assistant to the Mayor of San Juan, in her official and personal
capacities; JOHN DOE; JANE DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté, U.S. District Judge]

Before
Torruella, Leval,* and Thompson,
Circuit Judges.

Carlos M. Sánchez La Costa for appellants.
Ricardo Pascual-Villaronga, with whom Mercado & Soto, PSC was
on brief, for appellee Municipality of San Juan.
Michael Craig McCall, with whom Eliezer Aldarondo-Ortiz and
Aldarondo & López Bras, PSC were on brief, for appellee Jorge
Santini.
Antonio Montalvo Nazario, with whom Ángel A. Valencia-Aponte
was on brief, for appellee Zenaida Díaz.

October 20, 2011

_____

* Of the Second Circuit, sitting by designation.

**THOMPSON**, <u>Circuit Judge</u>.

**PRELUDE**

As Ricardo Ríos tells it, his professional life as a purchasing officer for the municipality of San Juan became a nightmare when Jorge Santini became San Juan's mayor in 2001. Ríos is an ardent supporter of the Popular Democratic Party (PDP). Santini belongs to a rival political party, the New Progressive Party (NPP). So does Zenaida Díaz, Ríos's one-time supervisor. Santini, Díaz, and other NPP operatives there pursued a purely political vendetta against him, Ríos says, doing things like diminishing his responsibilities, paying him less than similarly situated colleagues, taunting him about his colon cancer, and menacing him with strange comments and gestures – <u>e.g.</u>, during a May 2006 political rally Santini screamed at Ríos, "You are alone and I am going to cut your head off," and then ran a finger across his throat, which led Ríos to file a complaint with the police. Building to a crescendo, Ríos contends that NPP-clique members falsely accused him of disciplinary infractions as a trumped-up excuse to fire him in July 2006 for his political leanings and for his speaking out on matters of public concern (<u>e.g.</u>, his telling others about Santini's sub-par job performance and the frightening

encounter at the May 2006 rally) – making sure, of course, to rig the pre-termination hearing to reach a predetermined conclusion.[1]

As Santini and Díaz tell it, Ríos was a nightmare employee – a vulgar person who routinely humiliated and terrorized coworkers and supervisors alike, by word and action. Arrogant and defiant, Ríos, they say, lied through his teeth about Santini's shouting and throat-slashing motion at the May 2006 rally. Ríos, not Santini, was the real villain, they insist. Giving Santini the middle finger, Ríos yelled, "You are going down." No one bought Ríos's story, they quickly add, because, after an investigation, prosecutors found no reason to charge Santini with anything. Ríos had a record of disciplinary problems as long as the proverbial arm, but everyone always treated him above-board, all the way through the pre-termination hearing and firing – or so their argument goes.

## PROCEEDINGS

Convinced that he had been let go because of his PDP membership and his exercise of free-speech rights, Ríos and his domestic partner, Emma Velázquez Rodríguez, filed this federal-court suit under 42 U.S.C. § 1983.[2] Having apparently lived

---

[1] A commissioner on the municipality's Commission to Resolve Complaints and Personnel Affairs ("commission" for short) ran the hearing.

[2] Pertinently, the statute provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any

together since 2000, the two consider themselves married for all intents and purposes, though no one has officially married them. No party has made anything of this, and so we follow their lead, treating her claims as derivative of his and referring to him as if he were the only plaintiff.

Skipping over non-essentials, Ríos first sued the municipality, Santini, and two unnamed defendants in April 2007, alleging that his dismissal offended the First Amendment – a catch-all covering Count 1's claims of political harassment, discrimination, and retaliation. He also alleged that his firing infracted the Fourteenth Amendment – an umbrella encompassing Count 2's procedural-due-process and Count 3's equal-protection claims. Invoking the district court's supplemental jurisdiction, he also asserted claims arising under local law in Counts 4 (negligence) and 5 (retaliatory employment discrimination). He later filed a notice voluntarily dismissing that complaint without prejudice, which the district judge noted in June 2007. See Fed. R. Civ. P. 41(a)(1).

In August 2007 Ríos filed a second complaint, which was identical in all relevant respects to the first. He then amended

citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." Puerto Rico is a "State" and a municipality is a "person" for § 1983 purposes. On the first point, see Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 n.6 (1st Cir. 2008). On the second, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

that complaint in January 2008, adding Díaz as a defendant and a separate free-speech-retaliation count against all defendants. That count became Count 2, with the old Count 2 renumbered 3, the old Count 3 renumbered 4, and so on.

A word about Ríos's pleading style is appropriate. As pled, the political-retaliation component of Count 1 pivots off his contention that defendants fired him to retaliate for (a) his political affiliation and (b) his protected-speech activity. Allegation (a) is subsumed in Count 1's political-discrimination claim. Allegation (b) is subsumed in Count 2's free-speech-retaliation claim. See generally Mercado-Berrios v. Cancel-Alegría, 611 F.3d 18, 22-26 (1st Cir. 2010) (discussing the elements of each claim). And that is how we will deal with these allegations. See generally Alpine Bank v. Hubbell, 555 F.3d 1097, 1107-08 (10th Cir. 2009) (explaining that courts cannot "rely solely on labels in a complaint" but instead must "probe deeper and examine the substance") (quoting Minger v. Green, 239 F.3d 793, 799 (6th Cir. 2001)) (internal quotation marks omitted); Minger, 239 F.3d at 799 (stressing that "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states") (quoting United States v. Louisville & Nashville R. Co., 221 F.2d 698, 701 (6th Cir. 1955)) (internal quotation marks omitted); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1286, at 748-50, 758 (3d ed. 2004)

-5-

(noting that courts must "make a determined effort to understand what the pleader is attempting to set forth and to construe the pleading in his or her favor, whenever the interest of justice so requires," adding too that "[a] pleading will be judged by the quality of its substance rather than according to its form or label") (footnotes omitted).

Now on to the rulings at issue here. After some discovery, the parties moved for summary judgment – Ríos on the due-process claim, and Santini, the municipality, and Díaz on the entire gamut of federal and state claims. The judge denied Ríos's motion and granted the defendants'. His reasoning ran this way:

Ríos complains about events that happened between January 2001 or so (when Santini became mayor) and July 2006 (when Ríos got fired), which triggered a statute-of-limitations protest from Santini and the municipality. A § 1983 claim is a federal claim, but the limitations period is drawn from state law – here, Puerto Rico's one-year statute of limitations for personal-injury actions. See, e.g., Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). State-law tolling provisions apply too (unless they clash with federal interests, which is not the case here). See, e.g., Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 100 (1st Cir. 2004). Under Puerto Rico law, the filing of a lawsuit tolls the limitations period. See, e.g., Rodríguez v. Suzuki Motor Corp., 570 F.3d 402, 407 (1st Cir. 2009)

(discussing P.R. Laws Ann. tit. 31, § 5303). If the plaintiff voluntarily dismisses the suit without prejudice, the limitations clock resets and "run[s] anew from th[at] date." See Rodríguez-García, 354 F.3d at 96-97; accord Rodríguez, 570 F.3d at 407. Also, the earlier suit will toll the limitations period as to a later-filed suit if the two suits allege "identical" causes of action. See, e.g., Rodríguez, 570 F.3d at 409. And tolling a statute of limitations against one defendant tolls it against all "solidarily liable" defendants – "solidarily liable" is a civil-law concept that is a close cousin to the common-law doctrine of "joint and several liability." Tokyo Marine & Fire Ins. Co., v. Pérez & Cía., de Puerto Rico, Inc., 142 F.3d 1, 4 & n.1 (1st Cir. 1998). Above and beyond all that, there is the continuing-violations doctrine, which (to oversimplify slightly) lets one put off suing until a series of acts by the future defendant "blossoms" into a wrongful "injury on which suit can be brought." Pérez-Sánchez v. Public Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (quoting Morales-Tañon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008)) (internal quotation marks omitted). One of the best examples happens to be a hostile-work-environment case "based on the cumulative effect of individual acts," none of which is necessarily actionable on its own, that reveals itself over time, not "discrete discriminatory acts" that occur on a "particular

day." See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 115 (2002).

Applying these principles, the judge concluded that Ríos's causes of action had to have arisen from events occurring between April 2006 and April 2007.[3] Given this range, only claims tied to Ríos's May 2006 run-in with Santini and his later firing survived, the judge ruled. Ríos could not use the continuing-violation doctrine to get other events in beyond the limitations period, the judge added – each complained-of act was a separate actionable wrong. And Ríos's free-speech-retaliation count – which he unveiled for the first time in his January 2008 amended complaint – fell because it failed the identicality requirement when measured against his earlier, voluntarily-dismissed suit.

As for the merits, the judge tossed the political-discrimination and -harassment claims, finding that Ríos presented no evidence that Santini (a) knew Ríos's political affiliation, (b) abused Ríos or encouraged or tolerated Ríos's abuse, or (c) had a hand in Ríos's firing. And the judge jettisoned the equal-protection claim because it was just a rehash of the failed First Amendment claims. The judge then rejected the procedural-due-process claim, ruling that the summary-judgment record disclosed no evidence of Santini's meddling with the termination process. Given

---

[3] Because Ríos does not quibble with how the judge reached that result, we need not get into every single aspect of the judge's analysis.

that Santini could not be liable under § 1983, the judge saw no basis for holding Díaz solidarily liable. The judge also rejected any suggestion that the January 2008 amended complaint – which added Díaz as a defendant – related back to the original complaint and, thus, under Fed. R. Civ. P. 15, cured any statute-of-limitations problems. And, finally, because Santini could not be held liable for § 1983 violations, the judge saw no reason for holding the municipality liable either. So, wrapping up, the judge denied Ríos's summary-judgment motion on the procedural-due-process claim, granted the defendants' motions on that and the other federal-law claims, and dismissed the supplemental state-law claims without prejudice. He dismissed the unnamed parties from the case too.

The judge later declined to reconsider his decision, rejecting (among other things) Ríos's bid to fix a serious problem: Ignoring the court's local rules,[4] Ríos had submitted Spanish-only versions of two affidavits with his summary-judgment papers. When he tried to file the required certified English translations with his motion to reconsider, the judge called the effort too little and too late.

---

[4] See D.P.R. L.Civ.R. 10(b) (now appearing as D.P.R. L.Civ.R. 5(g)).

**ANALYSIS**

Ríos (with his wife) now appeals, presenting a profusion of issues. After getting rid of several of them up front, we take on what remains, mindful of the standards of review that apply. For starters, we review summary judgment de novo, construing the record and all reasonable inferences drawn from it in the light most favorable to the nonmoving party. See, e.g., Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 51 (1st Cir. 2000). Of course, the ground rules for summary judgment leave "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)" on the cold pages of the record. Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). Also, that multiple parties cross-moved for summary judgment on Ríos's procedural-due-process claim does not affect this protocol in the slightest. See, e.g., D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011) (explaining that the district judge must assess each motion separately, drawing inferences against each moving party in turn, and that we must still exercise de novo review). Next, we analyze the motion-to-reconsider issue for abuse of discretion. See, e.g., Ruiz Rivera v. Pfizer Pharm., LLC, 521

-10-

F.3d 76, 81 (1st Cir. 2008). When all is said and done, we affirm in part, reverse in part, and remand for new proceedings.

## Waiver

It should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument. See Tejada-Batista v. Morales, 424 F.3d 97, 103 (1st Cir. 2005) (stressing that "[a]n argument not seriously developed in the opening brief" is lost); see also Grigous v. Gonzáles, 460 F.3d 156, 163 (1st Cir. 2006); Canto v. Concord Hosp., Inc., 265 F.3d 79, 81-82 (1st Cir. 2001). And we consider waived arguments "confusingly constructed and lacking in coherence." United States v. Eirby, 515 F.3d 31, 36 n.4 (1st Cir. 2008). Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority. See United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997); see also Rodríguez v. Señor Frog de la Isla, Inc., 642 F.3d 28, 39 (1st Cir. 2011); Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 n.10 (1st Cir. 2010), cert. denied, 131 S. Ct. 1016 (2011); Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 143 n.9 (1st Cir. 2006). And they must give us the "raw materials" (transcripts spring quickly to mind) so that we can do our work, or they may lose as a consequence. See, e.g., Rodríguez, 642 F.3d at 37 (citing Campos-Orrego v. Rivera, 175 F.3d 89, 93

(1st Cir. 1999), and <u>Moore</u> v. <u>Murphy</u>, 47 F.3d 8, 10-12 (1st Cir. 1995)).

Ríos's handling of his equal-protection, political-harassment, and continuing-violation claims falls short of satisfying these requirements. Sure, he uses some buzzwords and insists that the judge stumbled in ruling on these claims. But he provides neither the necessary caselaw nor reasoned analysis to show that he is right about any of this. He offers no cases on the equal-protection issue. He gives us one off-point case on the political-harassment question, but he cites no evidence that Santini instigated or knowingly tolerated the harassment, and he makes no effort to show that the harassment was substantial enough to support a § 1983 claim. He points to a smattering of cases on the continuing-violation topic and contends that the evidence shows a series of discriminatory acts, but he does not clearly specify what this series was. What he has done "is hardly a serious treatment of . . . complex issue[s]" and is not sufficient to preserve these points for review, <u>Tayag</u> v. <u>Lahey Clinic Hosp., Inc.</u>, 632 F.3d 788, 792 (1st Cir. 2011) – certainly not when his "brief presents a passel" of other issues, <u>United States</u> v. <u>Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam). <u>See also United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (warning that it is not enough for litigants to mention arguments "in the most

skeletal way, leaving the court to do counsel's work").  The upshot is that these claims are waived.

Ríos does no better with his procedural-due-process claim, for this reason:  He did not give us a complete English translation of the commission proceedings, which we would need to help decide whether process misfired here.  So he loses this aspect of his appeal.  See, e.g., Rodríguez, 642 F.3d at 37; Tejada-Batista, 424 F.3d at 103.

Similar problems affect Ríos's attempt to undo the summary-judgment ruling for Díaz.  He suggests that Díaz is solidarily liable, which, again, is a rather complex tolling concept in Puerto Rico law.  See, e.g., Rodríguez, 570 F.3d at 406-13.  But he devotes only a single sentence in his opening brief to the issue, which simply asserts that he "tolled the statute of limitations" by suing "parties (including the Municipality) solidarily liable with Appellee Díaz."  He does not explain how that concept works generally or how it works here.  The net result is that this issue is waived.  See, e.g., Town of Norwood v. Fed. Energy Reg. Comm'n, 202 F.3d 392, 404-05 (1st Cir. 2000) (emphasizing, yet again, that "developing a sustained argument out of . . . legal precedents is the job of the appellant, not the reviewing court").

Finally, Ríos does not challenge the judge's decision dismissing the unnamed defendants from the suit.  Consequently, we

need say no more about that as well.  See, e.g., United States v. Slade, 980 F.2d 27, 30 n.3 (1st Cir. 1992).

We move along, then, to the non-waived issues.

**Summary Judgment**

**(a) Political Discrimination**

The First Amendment shields public employees from "political" firings, unless, of course, "partisan considerations are a legitimate requirement for the position in question." Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594 (1st Cir. 2011).  No one argues that Ríos's ex-job came within that exception, so we continue on.  A plaintiff like Ríos must show that political affiliation was a substantial or motivating factor in his ouster.  See, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Peñalbert-Rosa, 631 F.3d at 594. If he does, then the burden shifts to the defendants to show that they would have made the same decision regardless of his political ties – a defense familiarly known as the Mt. Healthy defense. Padilla-García v. Guillermo Rodríquez, 212 F.3d 69, 74 (1st Cir. 2000) (discussing Mt. Healthy, 429 U.S. at 287).

Ríos insists that the defendants drummed him out of municipal service because of his PDP affiliation.  Despite what the district judge thought, Santini knew about Ríos's PDP membership, Ríos says – a point driven home by Santini's ranting at Ríos during the May 2006 political rally that "[y]ou are alone and I am going

-14-

to cut your head off" (something others besides Ríos testified they heard and saw too). Ríos was a politically isolated target under Santini, Ríos quickly adds – that was the gist of Santini's harangue. And, the argument continues, hot on the heels of this nasty affair, Santini and the NPP got Ríos fired to retaliate for his not being an NPPer.

Not so fast, the defendants say. Santini did not know Ríos, did not know his party affiliation, and did not say or do what Ríos claims he said and did at the May 2006 political event. And assuming solely for summary-judgment purposes that Santini hollered at Ríos, "You are alone and I am going to cut your head off," and then, on top of that, made a throat-slashing motion with his finger, Santini and the municipality contend that none of this had anything to do with politics. At worst, what Santini supposedly said and did, they insist, simply amounted to a threat to physically assault Ríos.

We are not persuaded. Consider the context. Viewing the record and all reasonable inferences drawn from it in the light most flattering to Ríos, we see that some of Ríos's higher-ups knew he was a PDP member. His co-workers knew too. The political atmosphere there was highly partisan. And Ríos was on the wrong side. Special aide Díaz drove that point home, calling him the "isolated Popular" (recall that the first "P" in PDP stands for

"Popular").  Not to be outdone, executive officer Miguel Orta called him that "fucking Popular."[5]

Fast-forward to the May 2006 political rally.  A tumultuous clash between the NPP-controlled legislature and the PDP-governor in Puerto Rico led to a government shutdown.  Rallying to the NPP's cause, Santini held an all-night vigil near the governor's mansion.  A good crowd showed up.  Politicians were milling about.  Partisanship was in the air, clearly.  Santini spotted Ríos.  And then he allegedly made the you're-alone and I'm-gonna-cut-your-head-off comments.  Given the group at the scene, a rational finder of fact could infer, quite easily, that Santini was not saying that Ríos was simply hanging out alone at the rally.  Actually, Santini's you're-alone statement is eerily similar to Díaz's politically-charged gibe about Ríos's being the "isolated Popular" at work.  From all this, a rational factfinder could infer that Santini knew Ríos and Ríos's politics, which were on the outs with the ruling NPP.  As if more were needed, another witness to the jeers Santini directed at Ríos at the rally also heard Santini tell his escort that "he," meaning Ríos, is "thick-headed, like limited here in his capacity" – which certainly suggests that Santini knew Ríos.  And a level-headed factfinder could deduce from

_____

[5] These incidents apparently fall outside the limitations period.  But they can be used as "background evidence" to support Ríos's timely claims.  See, e.g., Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 142 (1st Cir. 2009) (citing, with another case, Morgan, 536 U.S. at 113).

this set of events that Santini wanted Ríos gone from his office –
that is the plainly-inferable message behind Santini's I'm-gonna-
cut-your-head-off tirade, i.e., that Santini was bent on
eliminating Ríos's job with the municipality as an act of political
payback.

This brings us to the multifaceted question of whether
political affiliation was a substantial or motivating factor behind
Ríos's firing and if so whether Santini participated in that
decision. See, e.g., Ocasio-Hernández v. Fortuño-Burset, 640 F.3d
1, 13-14 (1st Cir. 2011); Peñalbert-Rosa, 631 F.3d at 594-95.
Interpreting the record favorably to Ríos, we answer yes to the
first part, given the facts and inferences that we just noted – not
the least of which is Santini's administration's putting the
termination process into high gear a mere two days after Santini's
menacing outburst at Ríos. See Peñalbert-Rosa, 631 F.3d at 594
(noting that "[w]hile there may have been some reason independent
of political party for the firing, the opposite inference may be
drawn from," among other things, "the timing of the discharge").[6]

---

[6] Santini and the municipality cite a handful of cases that
they say show how insufficient Santini's statements are when it
comes to proving political discrimination. See, e.g., Nieves-
Luciano v. Hernández-Torres, 397 F.3d 1, 6 n.7 (1st Cir. 2005);
Vázquez-Valentín v. Santiago-Díaz, 385 F.3d 23, 38-39 (1st Cir.
2004), vacated and remanded on other grounds, 546 U.S. 1163 (2006);
Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 3-4, 7-8 (1st Cir.
2000). Their effort fails, however. The statements deemed
inadequate there – a mayor's saying that he wanted to "clean
house," Vázquez-Valentín, 385 F.3d at 38, or "clean the house of
NPP employees," Nieves-Luciano, 397 F.3d at 3, or "most NPP

-17-

We answer yes to the second part too, though it is a close call.

Puerto Rico law gives mayors like Santini the ultimate authority over municipal hiring and firing decisions. See P.R. Laws Ann. tit. 21, § 4109(o). Hoping to avoid the rather obvious implications of this, Santini makes much of the fact that he had delegated to others the power to formulate charges against and to dismiss municipal employees. Done way back in 2002 (well before Ríos lost his job), these delegations were on the up-and-up, Santini quickly adds. See id. § 4109(x) (discussing the mayor's right to delegate certain "powers, functions and duties that are conferred by this subtitle"). And those on the receiving end of Santini's delegations, Maritza Aguilar Jusino and Jorge Colomer Montes, filed affidavits saying that they neither consulted with nor took instructions from him concerning Ríos's termination.

But Santini testified at his deposition that he did not "normally participate" in the termination "process." "Normally" does not mean "always," of course. See Walker v. Exeter Region Coop. Sch. Dist., 284 F.3d 42, 45 (1st Cir. 2002). And, giving all reasonable factual inferences to Ríos, Santini's statement leaves

employees," Figueroa-Serrano, 221 F.3d at 4 – were too "generalized" to satisfy plaintiffs' summary-judgment burden. Nieves-Luciano, 397 F.3d at 6 n.7 (citing Figueroa-Serrano, 221 F.3d at 8). Taking all of the particulars detailed above in the light most sympathetic to Ríos – e.g., Santini's person-specific threat to Ríos, tinged with the promise of political reprisal and sparked by an intense anti-PDP atmosphere at work and at the rally – we do not think that that is a problem here.

open the possibility that he did participate in Ríos's firing – an inference that stands out in bold relief, given that Santini does not point us to any place in the massive summary-judgment record where he personally denied participating in Ríos's dismissal. Also, to the extent that this justifiable inference butts up against Aguilar's and Colomer's affidavits, that simply shows that a triable issue of fact exists as to Santini's participation.[7] See, e.g., Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 206 (1st Cir. 2006).

We summarize concisely. As we have said many times, "[s]ummary judgment is not a substitute for the trial of disputed factual issues." Walgren v. Howes, 482 F.2d 95, 98 (1st Cir. 1973) (quoting 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2712, at 379 (1971)) (internal quotation marks omitted). And eyeing the record here in the light most agreeable to Ríos, we see a genuine dispute about material facts – i.e., an actual controversy over facts that might affect the case's outcome under the governing law. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Consequently, we reverse the grant of summary-judgment on the political-discrimination claim.

_____

[7] Neither Santini nor the municipality advances a Mt. Healthy defense here, and we see no reason to say anything more on that subject.

-19-

## (b) **Free-Speech Retaliation**

Ríos also faults the judge for concluding that Puerto Rico's tolling laws did not save the free-speech-retaliation count, which first appeared in the January 2008 amended complaint. Captioned "Violation of Free Speech Guaranteed by the First Amendment," Count 2 of the January 2008 amended complaint alleged that Ríos "denounced the death threat" from Santini and criticized Santini's policies – speech that involved "matters of public concern," overshadowed any "countervailing governmental interest in promoting the efficient performance of public service," and was a "motivating factor" in his termination. To Ríos's way of thinking, a constellation of non-time-barred events reflected in his April 2007 complaint "clearly" points to a kindred "free speech claim." And that, he says, makes the April 2007 complaint and the January 2008 amended complaint functionally identical for tolling purposes, despite what the judge held. Ríos has a point, and it is a winning point too.

Puerto Rico's identicality requirement has three essentials: the causes of action must seek the same type of relief, "be based on the same substantive claims," and, generally speaking, "be asserted against the same defendants in the same capacities." Rodríguez-García, 354 F.3d at 98. Ríos asked for the same basic type of relief in both complaints. And both complaints allege the same basic substantive free-speech-retaliation claims

too.  True, the April 2007 complaint is not emblazoned with the phrase "free speech" count like the January 2008 amended complaint. But one can readily infer free-speech-retaliation claims from the facts pled in the April 2007 complaint.  There, Ríos discussed Santini's bizarre acts at the May 2006 political rally, explained how he complained to the police about them, stressed how the municipality gave notice of its intent to fire him days later, and, finally, accused the defendants of punishing him for making statements "protected under the First Amendment."  Also, Ríos alleged that he exercised his free-speech rights to speak out on other matters of public concern, "including, but not limited to," Santini's shoddy work as mayor, particularly when it came to keeping the city clean, adding that the defendants retaliated against him for doing just that.  All of this parallels what he alleged in the January 2008 amended complaint.  As for the identicality-of-parties requirement, Ríos pressed these claims against the municipality and Santini in both complaints, and he sued Santini in the same capacities in both suits – which put them on notice of his claims and allows us to check off this last factor.  See id. at 100.

The bottom line is that the judge erred in scrapping Count 2 of the January 2008 amended complaint on lack-of-identicality grounds.  But because we may affirm summary judgment

on any basis supported in the record, see, e.g., Pure Distrib., Inc. v. Baker, 285 F.3d 150, 156 (1st Cir. 2002), we soldier on.

As a fallback, Santini and the municipality contend here – as they did below – that the undisputed facts entitle them to judgment as a matter of law on the free-speech-retaliation claim. To establish free-speech retaliation, a plaintiff like Ríos must show that he spoke as a citizen on a matter of public concern, that his interest in speaking outweighed the government's interest, as his employer, in promoting the efficiency of the public services it provides (an inquiry known as Pickering balancing, see Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)), and that his speech was a "'substantial or motivating factor'" in his firing. See, e.g., Foote v. Town of Bedford, 642 F.3d 80, 82-83 (1st Cir. 2011) (quoting Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007)); see also Díaz-Bigio v. Santini, 652 F.3d 45, 51-52 (1st Cir. 2011). Santini and the municipality argue like this: (a) Ríos presented zero evidence that Santini had anything to do with the firing, which is a reprise of the delegation point. (b) Ríos also could not show that Santini knew that Ríos had criticized his sanitation policies. And (c) Ríos could therefore not show that his speech played a substantial or motivating role in his dismissal.[8] This argument fails.

--------

[8] Neither Santini nor the municipality crafts any argument bearing on the Pickering-balancing requirement, and we see no reason to delve into that matter.

-22-

We have already explained why their delegation argument falters.  True, they are spot-on in saying that the record does not show that Santini heard about Ríos's trash-collection carping.[9]  But that does not matter.  After all, the core of Ríos's free-speech-retaliation claim has two parts, as everyone seems to agree: his sanitation critique <u>and</u> his reporting Santini's threat to the police.  Interestingly, Santini and the municipality intimated below that Santini did not know what Ríos had said to the police.  But the summary-judgment record contains evidence supporting Santini's knowledge of what Ríos had told the authorities – <u>e.g.</u>, a witness to the Santini/Ríos incident said that a prosecutor had interviewed him with Santini's lawyers present; and Santini himself admitted that he knew Ríos had filed a complaint, that he had directed an attorney to look into the matter, and that he had been briefed on the situation too.  Ultimately, this evidence undoes the line of reasoning that they pursue here.

Perhaps sensing their vulnerability on this issue, Santini and the municipality attack Ríos's account on several fronts.  But their complaints basically go to Ríos's credibility, and credibility is best resolved at trial rather than at the summary-judgment stage.  <u>See</u>, <u>e.g.</u>, <u>Sensing</u> v. <u>Outback Steakhouse</u>

---

[9] Ríos testified at his deposition that <u>Díaz</u> was there when he grumbled publically about Santini's not keeping San Juan clean. That, however, is too slim a reed to support any suggestion that <u>Santini</u> knew about this particular beef, and Ríos gives us no real basis to conclude otherwise.

of Fla., LLC, 575 F.3d 145, 163 (1st Cir. 2009); Velázquez-García v. Horizon Lines of P.R., Inc., 473 F.3d 11, 17-18 (1st Cir. 2007); Walgren, 482 F.2d at 98. For summary-judgment purposes, the judge had to assume "the credibility of [Ríos's] evidence as forecast," Greenburg, 835 F.2d at 936 (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)) (internal quotation marks omitted); accord Hernandez-Loring, 233 F.3d at 51, and he erred by not doing that.

With these arguments out of the way, Santini and the municipality's position on the free-speech-retaliation claim collapses. And so we reverse the judge's grant of summary judgment on this claim too. See Pure Distrib., Inc., 285 F.3d at 158.

### (c) **Relation Back**

Turning back to Díaz, Ríos's Rule-15(c) argument – that the January 2008 complaint adding Díaz related back to the original complaint and so got him around any limitations obstacles – is a non-starter. To satisfy the rule, Ríos had to show (among other things) that Díaz "should have known that the action would have been against [her], but for a mistake [on Ríos's part] concerning the proper party's [Díaz's] identity." Fed. R. Civ. P. 15(c)(1)(C)(ii); see also Krupski v. Costa Crociere S.p.A., 130 S. Ct. 2485, 2493-99 (2010) (discussing in meticulous detail how the rule works). Ríos has not explained what mistake he made on the proper-party front, nor has he explained how Díaz should have known

-24-

that he would have sued her in the first place but for his unidentified mistake – again, Díaz was Ríos's supervisor, and he certainly knew her role in the alleged harassment. Cf. Krupski, 130 S. Ct. at 2494-96. He has not met his burden and so can find no refuge under the rule.

### (d) Municipal Liability

Ríos has shown that a reasonable jury could find a loss of First Amendment rights premised on political discrimination and free-speech retaliation. But not every loss of a constitutional right triggers municipal liability under § 1983. See, e.g., Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (discussing, among other cases, Monell, 436 U.S. at 691, 692). Quite the contrary. Liability only attaches where the municipality causes the deprivation through "an official policy or custom." Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008). One way of establishing a policy or custom is by showing that "a person with final policymaking authority" caused the supposed constitutional injury. Id. at 941, 942 (adding that municipal liability may turn on a single illegal act by an official possessing final policymaking authority over the relevant subject matter).

Like other mayors in Puerto Rico, Santini has final policymaking authority for municipal employment generally. See Rodríguez-García, 610 F.3d at 770. Again, the record shows that trialworthy issues exist concerning Santini's role in depriving

-25-

Ríos of his right to be free from unconstitutional political discrimination and free-speech retaliation – which means the record supports municipal liability on these two theories of constitutional injury too. See id. And to that extent, summary judgment for the municipality was inappropriate.

## Reconsideration

Ríos's contends that the judge erred by not accepting late-filed English translations of two Spanish-language affidavits that he had submitted with his motion for reconsideration. Citing Fed. R. Civ. P. 60(b)(1), he chalks up his untimely filing of the required English versions to a "mistake due to inadvertence." But he has not convinced us that his mistake comes within the class of mistakes the rule exists to fix, and we see nothing indicating that the judge abused his considerable discretion in ruling as he did. See Ruiz Rivera, 521 F.3d at 81.

## Local-Law Claims

One loose ends remains. Having rejected Ríos's federal-law claims, the judge opted to relinquish jurisdiction over the supplemental local-law claims without deciding whether they are tenable. Our vacating the dismissal of two federal-law theories (political discrimination and free-speech retaliation) against Santini and the municipality erases the basis for that ruling. Consequently, we vacate the order forsaking jurisdiction over the local-law claims against these two defendants as well, see, e.g.,

-26-

Ríos-Colón v. Toledo-Dávila, 641 F.3d 1, 5 (1st Cir. 2011), though the judge can reassess this aspect of the case on remand, see, e.g., 28 U.S.C. § 1367(c)(1), (2), and (4); Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 206 (1st Cir. 2000).

**FINALE**

Our decision leads us to affirm the judge in every respect except this: we vacate the grant of summary judgment for Santini and the municipality on the political-discrimination and free-speech-retaliation claims, and we vacate the dismissal of the state-law claims against them too.

**Affirmed** **in** **part,** **vacated** **in** **part,** **and** **remanded** **for** **further proceedings consistent with this opinion. Costs to Díaz only**.