# United States Court of Appeals
## For the First Circuit

No. 20-1377

MARIE V. PÁGAN-LISBOA; DANIEL JUSTINIANO-RAMÍREZ,

Plaintiffs, Appellants,

v.

SOCIAL SECURITY ADMINISTRATION; ANDREW M. SAUL, Commissioner of
Social Security Administration,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

---

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

---

Javier Andrés Colón Volgamore, for appellants.
Jaynie Lilley, Attorney, Appellate Staff, United States
Department of Justice, with whom Jeffrey Bossert Clark, Acting
Assistant Attorney General, W. Stephen Muldrow, United States
Attorney, and Mark B. Stern, Attorney, Appellate Staff, United
States Department of Justice, were on brief, for appellees.

---

April 22, 2021

---

**THOMPSON, <u>Circuit Judge</u>**.

**Setting the Stage**

This case is fallout from what the Social Security Administration did to Marie Págan-Lisboa and Daniel Justiniano-Ramírez after José Hernández-González (a neurologist) and Samuel Torres-Crespo (a nonattorney representative) copped to using fraud to help people get disability-insurance benefits from that agency.

*Statutory and Regulatory Regime*

A federal statute says that the agency must "immediately redetermine" whether a person actually deserved benefits when she or he applied for them "if there is reason to believe that fraud or similar fault was involved" in the application. <u>See</u> 42 U.S.C. § 405(u)(1)(A). Another part of the statute says that during the redetermination process, the agency must "disregard any evidence" in the benefits application "if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." <u>See</u> <u>id.</u> § 405(u)(1)(B).

An agency manual envisions three situations in which the "reason to believe" could materialize. One is when "[a]n [agency] investigation . . . results in a finding of fraud or similar fault." <u>See</u> <u>Social Security Administration Hearings, Appeals, and Litigation Manual</u> ("<u>HALLEX</u>") § I-1-3-25.C.4.a., available at https://www.ssa.gov/OP_Home/hallex/I-01/I-1-3-25.html. A second

- 2 -

is when the agency receives "[a] referral based on information obtained during a criminal or other law enforcement investigation." Id. And a third is when the agency's inspector general "refer[s] . . . information" to the agency. Id. Only when the agency discovers the fraud can a beneficiary "object[] to the disregarding of certain evidence"; and if the administrative law judge ("ALJ") "is satisfied" that the evidence is not fraudulent, "he or she will consider the evidence" — in the other two situations she or he cannot. See id.

*Agency Proceedings*

We move now from the general to the specific.[1] A team of agency special adjudicators reviewed benefits cases containing evidence from Hernández-González and Torres-Crespo, thinking — as relevant here, though incorrectly as we will see — that the inspector general had made a fraud referral. And that put Págan-Lisboa and Justiniano-Ramírez in the agency's cross-hairs.

Págan-Lisboa is a former patient of Hernández-González and a former client of Torres-Crespo. With their help, she applied for and started getting disability benefits (or so the agency writes, without contradiction). Relying on § 405(u), the agency later notified her that it needed to redetermine her benefits

---

[1] The background events are essentially undisputed for present purposes.

eligibility because her "case contain[ed] evidence" from "admitt[ed]" fraudsters Hernández-González and Torres-Crespo. The agency added that while she could argue to an ALJ that she was "entitled to benefits at the time of [her] original award," she could "not argue that [the agency] should consider evidence from [persons] who admitted they were guilty of making a false statement to [the agency]." Together with her lawyer, Págan-Lisboa participated in a hearing at which she testified. Ultimately, though, after disregarding evidence from Hernández-González and Torres-Crespo, the ALJ concluded that Págan-Lisboa did not have enough evidence to support her initial benefits claim and so terminated her benefits. And the agency's appeals council affirmed.

Hernández-González also submitted evidence in support of Justiniano-Ramírez's successful disability-benefits application (or so the agency says, again without contradiction). Unlike what it had done with Págan-Lisboa, however, the agency suspended Justiniano-Ramírez's benefits following the special adjudicators' review of the old applications when Hernández-González's and Torres-Crespo's fraud came to light. Of note, the agency told him about the criminal investigation into the fraud scheme, stated that at least one "discredited source[] provided evidence in [his] case," and explained that the benefits suspension would run through

the "redetermin[ation]" process.  A few weeks later, the agency notified him that it had concluded, first, that because Hernández-González had "provided incorrect, incomplete, or fraudulent evidence to us, . . . fraud or similar fault was involved in" his application; and, second, that he was not "entitled to benefits" after disregarding the part of the application containing the fraud.  He requested and received an ALJ hearing at which his lawyer — who also represented Págan-Lisboa — was present.[2]  But after ignoring evidence from Hernández-González, the ALJ ended up cancelling Justiniano-Ramírez's benefits, who then asked the appeals council to review the ALJ's decision (we will discuss shortly how the appeals council ruled).

*District Court Proceedings*

With his case pending before the appeals council, Justiniano-Ramírez teamed up with Págan-Lisboa and sued the agency for themselves and for a purported class of others similarly situated.  Running 73 pages and comprising 339 numbered paragraphs,

---

[2] Taking a step back, we note that before the hearing, Justiniano-Ramírez (as relevant here) sued the agency — on behalf of himself and a putative class of persons similarly situated — calling the redetermination process unlawful.  See Justiniano v. SSA, 876 F.3d 14, 18-19 (1st Cir. 2017).  The district court dismissed the suit for failure to exhaust administrative remedies. Id. at 21.  And we affirmed, adding that the then-existing circumstances did not justify a judicial waiver of the administrative-exhaustion requirement.  Id. at 31.

the complaint alleged a variety of claims, including — as relevant here — the following:

- The complaint quoted the ALJ as saying that "the [inspector general] notified [the agency] that there was reason to believe fraud was involved in certain cases . . . involving evidence supplied by" Hernández-González and Torres-Crespo. The complaint then noted that the agency's manual says that benefits recipients cannot appeal the agency's decision to disregard evidence that the agency's inspector general flagged as likely a product of fraud. See HALLEX § I-1-3-25.C.6.; see also Social Security Ruling 16-1p, 81 Fed. Reg. 13,436. And the complaint alleged that "[t]he ALJs erred" here by "validating the[se] . . . administrative instructions" and thus insulating the inspector general's fraud findings from dispute. Hammering the point home, the complaint complained that the ALJs "allow[ed]" the "finding[s] of fraud without" giving the "implicated person[s]" a chance "to meet the accusation[s] of fraud against [them]." And, the complaint continued, by not giving them the chance to fight the fraud allegation, the agency's redetermination system flouted many legal requirements — an important one being core requirements of procedural due process.

- The complaint asked the judge to judicially waive the administrative-exhaustion requirement for Justiniano-Ramírez and "all others similarly situated."

- And the complaint urged the judge to find that Págan-Lisboa "was disabled" at all relevant times.[3]

A few months after the complaint's filing, the appeals council affirmed the ALJ's decision in Justiniano-Ramírez's case.

Citing federal civil-procedure Rule 12(b)(6) and (b)(1), the agency then moved to dismiss the federal suit in part, arguing — so far as pertinent here — along these lines. Plaintiffs' allegations about the redetermination process, the agency said, did not state a claim for relief because the system satisfied all legal requirements — including due process. Moving on, the agency asserted that Justiniano-Ramírez had not challenged a "final" agency action. While acknowledging that he had since exhausted his administrative remedies, the agency stressed that he had not amended his complaint to reflect that development. And the agency insisted that his claim for waiver of the exhaustion requirement was now moot. So according to the agency, the only claim left in

---

[3] The complaint also recites lots of legal conclusions and editorializing comments — discussing some due-process cases decided over the years, for instance, and offering a deep dive into legislative history — none of which a court can accept as true. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

the case concerned whether the ALJ rightly found that Págan-Lisboa's initial benefits application lacked sufficient evidence.

Opposing the agency's motion, Págan-Lisboa and Justiniano-Ramírez — so far as relevant here — characterized the central issue driving the suit as whether the agency can "terminate[]" disability benefits in proceedings that "depriv[ed]" them of their due-process rights by not letting them "contest the existence of fraud in their cases." And to answer what they called the "simple" question at stake here — whether "a government agency [may] infringe on property and liberty rights without allowing individuals to defend themselves" — they quoted a passage from a divided decision by the Sixth Circuit saying that "refusing to allow plaintiffs to rebut the [inspector general's] assertion of fraud as to their individual applications violates the Due Process Clause of the Fifth Amendment." See Hicks v. Comm'r of Soc. Sec., 909 F.3d 786, 804 (6th Cir. 2018).

Days later, Págan-Lisboa and Justiniano-Ramírez also moved to "[s]upplement" the complaint to allege that Justiniano-Ramírez had exhausted his administrative remedies and to add a "request[]" for "a finding of disability" for him. For support, they cited federal civil-procedure rules 15(a)(1) (discussing amendments as of right) and 15(d) (discussing supplementary pleadings).

Acting on the agency's motion to dismiss, the judge — ruling in an electronic order — "agree[d]" with the agency that "[p]laintiffs' challenges to the redetermination process . . . fail to state a claim" for "relief" and that "[t]he only claim pending before the [c]ourt is [Págan-Lisboa's] claim for review of the [agency's] final decision regarding her [benefits] entitlement."

The judge never ruled on plaintiffs' motion to "supplement" the complaint, however.

Of crucial importance to this appeal, the agency — in a major about-face — concluded after the dismissal that Págan-Lisboa *did have a right* to show at a new redetermination proceeding that her benefits application had no fraud and that the targeted evidence was worth considering (the agency apparently still believed in the dismissal of Justiniano-Ramírez's case on failure-to-exhaust grounds). According to the agency, it "itself determined that reason existed to believe that fraud was involved in the prior proceedings." This matters because, as we noted above, the agency's manual says that in cases where the agency — rather than the inspector general or a prosecutor — discovers evidence that may have been touched by fraud, the beneficiaries can "object[] to the disregarding of certain evidence"; and if the ALJ "is satisfied" that the evidence is not fraudulent, "he or she

will consider the evidence." See HALLEX § I-1-3-25.C.4.a. And having told the judge that it "decline[d] to continue with the defense of [Págan-Lisboa's] case," the agency requested a remand for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). That provision empowers a district judge to return a case to the agency by "enter[ing] . . . a judgment affirming, modifying, or reversing" an agency decision "with or without remanding the cause for a rehearing."

Before plaintiffs could respond to the agency's motion, the judge granted the request and entered final judgment remanding Págan-Lisboa's case to the agency, ordering the agency to reinstate her benefits back to the date the agency terminated them (while the agency worked on a new decision), and dismissing "all [other] claims."

Which brings us to today.

**Resolving Págan-Lisboa and Justiniano-Ramírez's Appeal**

Págan-Lisboa and Justiniano-Ramírez think "the [j]udgment should be reversed in its entirety." They make four broad arguments. The first is that the judge wrongly dismissed their "policy challenges" to the redetermination procedure. The second is that the judge entered a defective sentence-four remand and wrongly prevented Págan-Lisboa from opposing the agency's remand request. The third is that the judge wrongly dismissed

- 10 -

Justiniano-Ramírez's claims on failure-to-exhaust grounds.  And the fourth is that the judge should have "waive[d] the exhaustion" requirement "for [the] class action members."

What looks like a complicated appeal is actually pretty straightforward — as we now explain, using an analysis similar to that in the agency's appellate brief.

*Redetermination Procedure*

Págan-Lisboa and Justiniano-Ramírez's lead brief spends the most time refighting the failure-to-state-a-claim battle, which again chiefly centered on whether they should get a chance to counter the inspector general's (or prosecutor's) fraud assertions — something we keep much in mind as we take on the controversy before us.  And this representative sample of their many statements — offered to get us to reverse the judge's failure-to-state-a-claim ruling — makes our point:

- Págan-Lisboa and Justiniano-Ramírez's lead brief says that "[t]he termination policy implemented . . . violates [their] due process rights by depriving them of the ability to contest the existence of fraud in their cases."  They took that language nearly word-for-word from their motion-to-dismiss opposition.  There they contended "that the termination policy implemented . . . violates their due process rights by

depriving them of the ability to contest the existence of fraud in their case[s]."

- More, Págan-Lisboa and Justiniano-Ramírez's lead brief states that

  > [t]he . . . redetermination policy violates due process by:   1) not giving adequate notice, 2) not disclosing the evidence on which the redetermination is based, 3) not allowing a challenge of the adverse evidence, 4) not making individualized findings of fact, 5) not allowing a challenge of the redetermination, 6) shopping for adjudicators that are far and disconnected from the appellants' circumstances and partial towards the [agency], 7) ignoring existing statutory dispositions, and 8) ignoring existing regulatory dispositions.

  That is basically a recycled argument from their motion-to-dismiss opposition, which was that

  > [t]he . . . redetermination policy violates due process by:   1) not giving adequate notice, 2) not disclosing the evidence on which the redeterminations were based, 3) not allowing them to challenge the evidence, 4) not making individualized findings of fact, 5) not allowing them to challenge the redetermination, 6) shopping for adjudicators that are far and disconnected from their circumstances and are partial towards the [agency,] 7) not applying existing statutory dispositions, [and] 8) not applying existing regulatory dispositions.

- More still, Págan-Lisboa and Justiniano-Ramírez's lead brief insists that "[t]he [agency] argues that the fiscal and administrative burdens to the government outweigh the risks

and hardships caused by erroneous deprivation to the individuals; therefore the policy doesn't violate the Constitution." That is virtually the same charge appearing in their motion-to-dismiss opposition, which was that "[t]he [agency] argues that no constitutional rights are involved because the fiscal and administrative burdens to the government outweigh the risk and hardships caused by erroneous deprivation, therefore the policy doesn't violate the Constitution."

- Even more, Págan-Lisboa and Justiniano-Ramírez's lead brief declares that a "[c]ourt does not owe deference to" an agency's "statutory interpretations" that "unreasonab[ly]" stopped them from showing their evidence was not tainted by fraud. That essentially echoes an argument given in their motion-to-dismiss opposition, which said that a "[c]ourt does not owe deference to [an agency's] unreasonable interpretations of the law."

- Even more still, Págan-Lisboa and Justiniano-Ramírez's lead brief seeks refuge in <u>Hicks</u>. The Sixth Circuit there, they write (though emphasis ours), "already" stamped "the *specific policy at hand*" "unconstitutional." Making their position crystal clear, they insist (quoting <u>Hicks</u>, but again emphasis ours) that the Sixth Circuit shot down the very same arguments

the agency offers here when it held that "refusing to allow plaintiffs to rebut the [*inspector general's*] *assertion of fraud* as to their individual applications violates the Due Process Clause of the Fifth Amendment." See 909 F.3d at 804. Hicks, they write, "is not binding on First Circuit courts but it is binding on the agency everywhere [the agency] operates" — the agency (again, still quoting them) "cannot treat a policy as unconstitutional for citizens in some states and as constitutional for citizens in other states." All of that is a rehash of arguments they floated below in the hopes of fending off dismissal, seeing how they stressed there (once again, emphasis ours) that Hicks "found" the "*same* agency policy" to be "unconstitutional."

- And even more still, Págan-Lisboa and Justiniano-Ramírez's lead brief argues at length that statutory language and legislative history undercut the agency's motion-to-dismiss theories. Their motion-to-dismiss opposition alludes to statutory-based arguments too.

That leads us to this point. By focusing their appellate attack on an agency policy that they say wrongly makes the inspector general's (or a prosecutor's) fraud accusation gospel, Págan-Lisboa and Justiniano-Ramírez mistake the reality of their situation. And that is because they ignore the agency's *post-*

motion-to-dismiss concession that the agency — not the inspector general (or a prosecutor) — discovered the fraud, meaning that per agency policy, they must (and will, the agency says) get a chance to persuade an ALJ that there is no reason to believe that the complained-of evidence is fraudulent. The agency's brief captures all this very nicely: "the agency erroneously treated these cases as it would a referral from the [i]nspector [g]eneral" — erroneously, because the agency "itself determined that reason existed to believe that fraud was involved in the prior proceedings"; so the agency "did not" (but now will) give "plaintiffs . . . the opportunity to challenge the existence of fraud in the provision of evidence" at the ALJ hearings, *i.e.*, the agency "did not" (but now will) give them "the opportunity which they should have received under agency policy."

We judges work in an adversarial system, not an inquisitorial one. See, e.g., United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020); McNeil v. Wisconsin, 501 U.S. 171, 181 n.2 (1991). Which means we rely big-time on litigants for evidence, research, and argument. See, e.g., Sineneng-Smith, 140 S. Ct. at 1579; McNeil, 501 U.S. at 181 n.2. So parties seeking relief must properly identify the "issues for decision," Sineneng-Smith, 140 S. Ct. at 1579, setting them "out . . . clearly, highlighting the relevant facts and analyzing on-point authority,"

Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).  Now, to repeat what we said a second ago (because it is so important), Págan-Lisboa and Justiniano-Ramírez's lead brief challenges an agency process — provided when the inspector general (or a prosecutor) discovers the fraud, which per the manual is unreviewable — that is *not* in play, thanks to the agency's concession.  See HALLEX § I-1-3-25.C.4.a.; id. § I-1-3.25.C.6.[4]  Their lead brief does not meaningfully contest the agency process — provided when the agency discovers the fraud, which per the manual lets beneficiaries object "to the disregarding of evidence" — that *is* in play, again, thanks to the agency's concession.  See id. § I-1-3-25.C.4.a.  And because they have not properly put the at-issue process in dispute, their challenge to the redetermination process is a nonstarter.  See generally Rodríguez, 659 F.3d at 175-76 (discussing how not to litigate an issue on appeal).

Taking a belt-and-suspenders approach, we note that to the extent Págan-Lisboa and Justiniano-Ramírez believe their lead brief does challenge the now-at-issue process, we would find that challenge too "skeletal" or "confusingly constructed" and thus waived.  See id. (quotation marks and citations omitted).  And to

---

[4] Obviously then we need not decide whether the Sixth Circuit decided Hicks correctly, thus leaving that issue for another day.

the extent they think they fixed this problem in their reply brief or at oral argument, we would consider that to be too late and thus waived as well. See, e.g., United States v. Cruz-Ramos, 987 F.3d 27, 43 (1st Cir. 2021); Conduragis v. Prospect Chartercare, LLC, 909 F.3d 516, 518 n.2 (1st Cir. 2018).

*Sentence-Four Remand*

Next up is Págan-Lisboa's protest about the judge's sentence-four remand. As a reminder, sentence four of 42 U.S.C. § 405(g) authorizes a district judge "to enter . . . a judgment affirming, modifying, or reversing" an agency's decision "with or without remanding the cause for a rehearing." In Págan-Lisboa's telling, the judge stumbled because he used sentence four without specifying that he was affirming, modifying, or reversing the agency's decision to cancel her benefits. But applying fresh-eyed review (*de novo* review, in judge-talk), see Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020) (citing, among other authorities, Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001)), we see no basis to reverse on this issue.

Recall again what triggered the agency's remand request: realizing it had used the wrong process, the agency found it could no longer "continue with the defense of [Págan-Lisboa's] case" and so conceded the need for *new* agency proceedings where she will now get to explain why the ALJ can consider evidence labeled possibly

fraudulent. And by granting the agency's request, the judge recognized that the disputed redetermination decision could not stand — there must be a redo. At least that is *implicit* in the judge's judgment — also making us comfortable with this at-least-that-is-implicit conclusion is that the judge ordered the agency to put Págan-Lisboa in the position she was in benefits-wise before the agency's redetermination decision. See generally Hicks v. Berryhill, No. 16-154, 2017 WL 1227929, at *3 (E.D. Ky. Mar. 31, 2017) (noting that because the agency's redetermination decision "is reversed," the agency "must . . . return [the beneficiary] to the position she was in before the agency's decision"). Given these circumstances, we conclude that the judge's remand was a reversal — particularly since the Supreme Court says sentence four applies to cases where the agency "has *failed* to provide a full and fair hearing, to make explicit findings, or *to have correctly appl[ied] the law and regulations*." See Melkonyan v. Sullivan, 501 U.S. 89, 101 (1991) (emphasis added and citation omitted); see also Hicks, 2017 WL 1227929, at *1-2 (concluding that a sentence-four remand — entered without the judge deciding whether the agency's decision to cancel benefits "was right or wrong" — amounted to a reversal of the agency's decision, because if the agency's "process cannot be trusted, neither can its result," and so "[i]ts result . . . cannot stand" even if the beneficiary "might

- 18 -

lose on remand"; also arguing by analogy that a "[c]ourt would not grant a defendant a new trial and yet keep his conviction in place" (quotation marks and citation omitted)).  For the future, however, we ask judges using their sentence-four powers to please say *explicitly* whether they are affirming, modifying, or reversing an agency's decision.

Págan-Lisboa makes no effective counterargument either.

Selectively quoting a snippet from Melkonyan — stating that the district court there "did not make any substantive ruling" but "merely returned the case to the agency for disposition," see 501 U.S. at 98 — she suggests that before using his sentence-four authority, the judge here had to first rule on whether she has sufficient evidence to justify benefits.  But as we said in the last paragraph, Melkonyan makes it clear as glass that a sentence-four remand is proper where the agency "has failed to . . . have correctly appl[ied] the law and regulations."  See 501 U.S. at 101.  And that is exactly what happened in this case, as the agency concedes.

Somewhat relatedly, Págan-Lisboa theorizes that because she and Justiniano-Ramírez raise many "legal challenges," the remand "back to the [agency] without first adjudicating [all] these issues subjects [them] to piecemeal litigation" and thus makes the sentence-four remand improper.  Without passing on the correctness

of what she says, we simply say that because she did not press this theory in the opening brief but presented it only in the reply brief, we consider it waived. See, e.g., Cruz-Ramos, 987 F.3d at 43. And the same goes for other appellate arguments not raised until the reply brief — by way of example (and without limitation): the claim that "[t]he court could also reverse without a remand the agency's finding that the evidence shows reason to believe that fraud was involve[d] in [her and Justiniano-Ramírez's] cases."

As a last-ditch effort, Págan-Lisboa mentions a district court rule that pertinently provides that "[u]nless within . . . 14 days after the service of a motion the opposing party files a written opposition to the motion, the opposing party shall be deemed to have waived any objection to the motion." See D.P.R. Civ. R. 7(b). From there, she points out that the judge granted the agency's remand request without giving her the chance "to oppose the [agency's] motion" — and in doing so, her argument goes on, the judge violated her "statutory" and "due process" rights. She cites no caselaw to support her position, however. That of course spells trouble because "developing a sustained argument out of . . . legal precedents" is a party's responsibility, not ours. See Town of Norwood v. FERC, 202 F.3d 392, 405 (1st Cir. 2000) (noting that arguments made but not developed do not preserve

- 20 -

issues for our review).  And even if we were willing to overlook that defect (and we are not), the only prejudice she alleges from this supposed local-rule infraction is that she would have argued that the judge did not comply with sentence four's requirements. But as noted, we think the judge complied with sentence four's requirements.[5]

*Dismissal of Justiniano-Ramírez's Claims*
*On Failure-to-Exhaust-Grounds*

We can make quick work of Justiniano-Ramírez's claim that the judge slipped in not considering his amended complaint, which shows that he (Justiniano-Ramírez) had exhausted administrative remedies.  As the agency rightly concedes here, Págan-Lisboa and Justiniano-Ramírez attached the amended complaint to a motion that pertinently invoked federal civil-procedure rule 15(a)(1), which lets plaintiffs amend a complaint "once as a matter of course" within 21 days of the original complaint, an answer, or a motion to dismiss — and (to quote the agency) Págan-Lisboa and Justiniano-Ramírez "timely" moved to amend.  Because that rule authorized the amendment, the judge had to accept it — meaning our judge legally erred in not doing so, as the agency also concedes.

---

[5] A quick aside:  Responding to a post-argument order of ours, the agency wrote that it "has begun the process of reinstating P[á]gan-Lisboa's benefits at this time rather than upon remand to the agency."

- 21 -

See generally 6 Arthur R. Miller, Mary Kay Kane, and A. Benjamin Spencer, Federal Practice and Procedure § 1480 (3d ed. 2020) (noting that "Rule 15(a)(1) states" that a party eligible under that rule "may amend a pleading once without the permission of the court or the consent of the parties" (footnotes omitted)).

As for what to do about this, we agree with the agency that the specific circumstances here require us to send Justiniano-Ramírez's case back to the district court just so the judge can accept the amendment and then (to again quote the agency) "remand [his] case to the agency for new redetermination proceedings permitting him to challenge the exclusion of evidence submitted by . . . Hernández-González in his case."[6]

*Waiver of Exhaustion Requirement*
*For "Class Action Members"*

There is not much to say about Págan-Lisboa and Justiniano-Ramírez's claim that we should (emphasis ours) "judicially waive the exhaustion requirement for *all class members* that have not yet exhausted administrative review." A critical premise of their argument is that the suit became a class action.

---

[6] Another quick aside: Reacting to our post-argument order, the agency also wrote that as part of the new judgment for Justiniano-Ramírez, the judge "could also order reinstatement of benefits back to the date of the ALJ's redetermination . . . or to the date of the termination of [his] benefits" — something that the parties and the judge can sort out on remand.

- 22 -

But they make no persuasive argument that the suit ever did — the record discloses no order granting or denying certification, for instance, and they make no convincing claim of a possible implied certification.[7]  See generally Navarro-Ayala v. Hernandez-Colon, 951 F.2d 1325, 1334 (1st Cir. 1991) (commenting that "[w]hile express class certification is a fundamental requirement, uncertified actions have on occasion been recognized as class actions," like when the parties and the judge acted at all times as if a class existed); see also Rodríguez, 659 F.3d at 175 (noting that "we deem waived [arguments] not made or [arguments] adverted to in a cursory fashion").  So their argument goes nowhere.

### Wrapping Up

For the reasons recorded above, we affirm the judgment entered below, with a single exception:  as to Justiniano-Ramírez, we vacate that part of the judgment against him and remand so the judge can accept the amended complaint and then enter a new judgment remanding his case (with Págan-Lisboa's) for a new redetermination proceeding consistent with this opinion.  All parties shall bear their own costs on appeal.

*So ordered*.

---

[7]  Unsurprisingly, Págan-Lisboa and Justiniano-Ramírez's notice of appeal makes no mention of an order granting or denying certification.