# United States Court of Appeals
## For the First Circuit

No. 16-2227

DANIEL JUSTINIANO; FRANCISCO MENÉNDEZ; PERSON A,

Plaintiffs, Appellants,

v.

SOCIAL SECURITY ADMINISTRATION; NANCY A. BERRYHILL, Acting
Commissioner of the Social Security Administration,[*]

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Javier Andrés Colón Volgamore for appellants.
Thomas Pulham, Attorney, Appellate Staff, Civil Division,
U.S. Department of Justice, with whom Benjamin C. Mizer, Principal
Deputy Assistant Attorney General, Rosa E. Rodríguez-Vélez, United
States Attorney, and Mark B. Stern, Attorney, Appellate Staff,
Civil Division, were on brief, for appellees.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Acting Commissioner
of the Social Security Administration Nancy A. Berryhill has been
substituted for former Acting Commissioner of the Social Security
Administration Carolyn W. Colvin as defendant-appellee.

November 21, 2017

**BARRON**, **Circuit Judge**.    The Social Security Administration ("SSA") terminated the disability benefits that Daniel Justiniano and Francisco Menéndez -- the plaintiffs-appellants -- had been receiving.[1]    The SSA did so based on a concern that the medical evidence that supported Justiniano's and Menéndez's applications for those benefits was fraudulent because in each case that evidence was traceable to a physician who was the subject of a federal fraud investigation.

Justiniano and Menéndez each challenged administratively the SSA's decision to terminate the benefits for which they had applied.    Justiniano and Menéndez contended that, among other things, the SSA, in so deciding, neither adequately notified them of the evidence of fraud nor provided them with an opportunity to challenge that evidence.    Justiniano and Menéndez contended that, in consequence, the SSA violated their constitutional right to due process of law and their rights under the Social Security Act and its implementing regulations.

Before the two men had exhausted the administrative review process, however, they filed suit in federal court.    In that suit, they sought various kinds of relief based presumably on the same grounds as the claims that they had presented to the SSA

---

[1] The complaint also names "Person A" as a plaintiff.    But, because the plaintiffs do not discuss this third plaintiff in their appellate brief, neither do we do so here.

in seeking to continue to receive their benefits.  The government moved to dismiss the suit, and the District Court did so for lack of subject matter jurisdiction based on the plaintiffs' failure to have exhausted their administrative remedies.

Justiniano and Menéndez now appeal that jurisdictional ruling.  Because they have failed to show that they could not obtain a restoration of their benefits through the administrative review process, despite evidence suggesting that they would have a substantial chance of doing so, we affirm.

**I.**

The undisputed facts are drawn from the complaint and certain documents and affidavits that were filed by the parties below.  See Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996).  For several years, Justiniano and Menéndez received benefits under the Social Security disability insurance program established by Title II of the Social Security Act, 42 U.S.C. §§ 401-34.

In November of 2013, however, the SSA notified Justiniano and Menéndez that their benefits were being suspended pending a redetermination of their entitlement to them.  The SSA was acting pursuant to a provision in the Social Security Act, 42 U.S.C. § 405(u), by which "[t]he Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is reason to believe

- 4 -

that fraud or similar fault was involved in the application of the individual for such benefits." Id. § 405(u)(1)(A). Section 405(u) provides that, during the redetermination process, the SSA "shall disregard" any evidence in an application for benefits that the agency has "reason to believe" is fraudulent. Id. § 405(u)(1)(B). And, the provision further specifies, the SSA "may terminate" a claimant's benefits if, after reviewing what evidence is left in the application for benefits, "there is insufficient evidence to support [an] entitlement" to benefits. Id. § 405(u)(3).

Here, the SSA's notices to Justiniano and Menéndez explained that a redetermination of the disability benefits that each had been receiving was necessary because each of their applications for those benefits possibly contained medical evidence from one of several suspects who was under federal investigation for fraud in connection with the filing of disability benefits applications. Those notices indicated, however, that additional evidence could be presented to the SSA in support of the disability benefits application. Medical reports from doctors whom Justiniano and Menéndez allege they consulted were received by the agency following those notices.

Within two months of sending the notices regarding the suspension of the benefits, the SSA completed the process of redetermining the benefits for Justiniano and Menéndez and separately notified each of them of the termination of the benefits

that they had been receiving. Each termination notice explained that the SSA had "disregarded" medical evidence in the benefits application that had been provided by a physician who had pleaded guilty in the fraud investigation. In consequence, each notice explained that, based on a review of the evidence that remained in each application for benefits, the applicant was "not disabled" and thus not entitled to disability benefits.

Each plaintiff requested reconsideration of the SSA's decision to terminate benefits. The SSA then confirmed its termination decisions in the summer of 2014. The SSA advised both Justiniano and Menéndez that they could appeal from the benefits termination decisions by requesting a hearing before an administrative law judge ("ALJ"). Both Justiniano and Menéndez did so.

In October of 2015, however, in advance of any hearing before an ALJ on either Justiniano's or Menéndez's administrative appeal, they jointly filed this suit in the United States District Court for the District of Puerto Rico. Their complaint in that suit challenges the SSA's termination of their benefits on the following grounds.

The complaint alleges that the SSA's termination decision in each case was made without providing (1) adequate notice of the evidence of fraud that the SSA relied on in making its decision to disregard the medical evidence contained in the

plaintiffs' benefits' applications and (2) any opportunity to challenge the finding of fraud in their individual cases.[2] The plaintiffs also deny in their complaint that any medical evidence in their benefits applications was fraudulent. Their complaint thus alleges that the SSA "reopen[ed]" the plaintiffs' cases "in bulk" simply by relying on evidence of fraud from "unrelated" cases that merely happened to contain medical evidence from the same physicians who provided evidence in the plaintiffs' cases.

The complaint further alleges that the termination notices that the SSA sent to the plaintiffs were "boilerplate" that neither informed the plaintiffs "what actions (if any) by the plaintiffs constituted fraud" nor identified "what evidence the [SSA] relied on to make its decision." In addition, the complaint alleges that the plaintiffs were "not allowed to challenge the decision that fraud or similar fault was present in their individual cases" and that, during the redetermination process, "[t]he only evidence that would be received was evidence of [a] medical nature and only evidence in support of a finding of the

---

[2] The complaint also alleges that the SSA "failed to provide the plaintiffs with adequate notice of the intent to terminate benefits." The government pointed out at oral argument that the plaintiffs have not developed any argument as to why the SSA's initial notices of suspension pending a redetermination of eligibility for benefits provided insufficient notice of the SSA's intent to terminate benefits. We agree, and we therefore consider the issue waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

existence of impairment," thus excluding any "[e]vidence of the existence or inexistence of fraud."

On the basis of these allegations, the complaint contends that the SSA's benefits termination decisions violated various legal requirements. In particular, the complaint alleges that "[t]he presumption of fraud inherent in the [SSA's] decisions violates the plaintiffs' Fifth Amendment right to the due process of law." In this regard, the complaint asserts that "[t]he basic [tenets] of due process require that the [SSA] carry the initial burden of proof of fraud in the specific cases before the cases can be reopened, the medical determinations revised and benefits terminated. Due process further requires adequate notification of any accusation against the plaintiffs . . . ."

The complaint also alleges that the SSA's termination process violated the Social Security Act and its implementing regulations. Specifically, the complaint alleges that the SSA had "reopen[ed]" the cases without complying with 20 C.F.R. § 404.988(c)(1), which provides that "[a] determination, revised determination, decision, or revised decision may be reopened . . . [a]t any time if . . . [i]t was obtained by fraud or similar fault." The complaint contends that the regulation's reference to the reopening of "[a] determination" (singular) requires redeterminations to be made "on a case by case basis" based on evidence of fraud specifically tied to each individual case.

- 8 -

The relief that the plaintiffs seek in their suit includes a declaratory judgment that the SSA's bulk redetermination of their disability benefits violated the federal Constitution, the Social Security Act, and certain regulations; actual and statutory damages; and a reinstatement of their benefits.[3] The plaintiffs also request payment of benefits that were not paid during the termination period and an injunction against billing them for an overpayment of benefits. Moreover, in their complaint, Justiniano and Menéndez seek to assert not only their own claims but also those of a putative class of similarly situated people whose disability benefits had been terminated in connection with the same federal fraud investigation that formed the basis for the decision to terminate their benefits.

Before Justiniano and Menéndez moved to have their putative class certified, however, the SSA filed a motion to dismiss. The motion sought dismissal, in part, under Rule 12(b)(6)

_____

[3] A second count in the complaint alleges additional constitutional, statutory, and regulatory violations based on the plaintiffs' allegation that the SSA hearing office to which the plaintiffs' cases had been assigned was not processing their administrative appeals. The complaint includes a request for declaratory and injunctive relief on this count as well. However, on appeal, although the plaintiffs' statement of facts in their opening brief states that the hearing office "received instructions to not process the cases until SSA provided further instructions," the plaintiffs' arguments pertain only to their complaint's first count that the SSA's termination process was unlawful. They have thus waived any arguments with respect to their second count. See Zannino, 895 F.2d at 17.

of the Federal Rules of Civil Procedure on the ground that the plaintiffs had failed to state a claim upon which relief could be granted. The motion also sought dismissal under Rule 12(b)(1) on the ground that, regardless of the merits of the plaintiffs' legal claims, the District Court lacked subject matter jurisdiction under 42 U.S.C. §§ 405(g) and (h) because the plaintiffs had failed to exhaust the administrative remedies available to them before filing suit.

Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain review of such decision" in federal district court. And Section 405(h) in turn states:

> No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 [federal question jurisdiction] or 1346 [federal defendant jurisdiction] of Title 28 to recover on any claim arising under this subchapter [governing the Social Security old-age, survivors, and disability insurance programs].

In consequence of these two provisions, a claim for benefits that "arises under" the Social Security Act must comply with Section 405(g) in order for a federal district court to have jurisdiction over that claim. There are generally two requirements that must be met in order for a claim for benefits that "arises

under" the Social Security Act to be in compliance with Section 405(g).

First, "a claim for benefits shall have been presented to the Secretary." Mathews v. Eldridge, 424 U.S. 319, 328 (1976).[4] Second, "the administrative remedies prescribed by the Secretary [must] be exhausted." Id. These two requirements together ensure that an individual seeking federal judicial relief in a case "arising under" the Social Security Act is doing so, as Section 405(g) requires, "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party."

Importantly for present purposes, although the presentment requirement is not waivable, the exhaustion requirement may be. Id. Moreover, in some cases, the exhaustion requirement is waived by the federal court itself and thus without the Secretary's consent through what is known as a judicial waiver of exhaustion. Heckler v. Ringer, 466 U.S. 602, 618 (1984) (citing Eldridge, 424 U.S. at 330-32).[5]

_____

[4] The Court's reference to a "claim for benefits" with respect to the presentment requirement does not necessarily indicate that the claim pertains to a substantive entitlement to benefits. In Eldridge itself, for example, the Court found that the presentment requirement was satisfied because a "claim for benefits" had been presented to the agency, even though the claim was deemed "entirely collateral to [the plaintiff's] substantive claim of entitlement." 424 U.S. at 328, 330-31.

[5] The term "waiver" is, arguably, a misnomer insofar as the court itself -- as opposed to the agency -- would not seem to have any authority to "waive" a statutory requirement. More precisely, the judicial waiver doctrine approved by the Supreme Court reflects

- 11 -

With respect to the jurisdictional question, the government argued in its motion to dismiss that the plaintiffs' claims in their complaint "arise under" the Social Security Act. The government further argued that the plaintiffs had not yet received "final decisions" from the SSA because although the plaintiffs presented their claims to the SSA, they failed to exhaust the administrative appeals process. Accordingly, the government contended that the District Court lacked subject matter jurisdiction.

The plaintiffs responded below to the motion to dismiss for lack of subject matter jurisdiction by arguing that the claims in their complaint did not "arise under" the Act. The plaintiffs contend on appeal that they also argued below, in the alternative, that -- even assuming that their claims did "arise under" the Act -- the plaintiffs qualified for a judicial waiver of the exhaustion requirement. With respect to judicial waiver, the plaintiffs contend that they asserted that the claims set forth in their complaint in federal court were "fit for resolution" and "outside of the Commissioner's discretion," and that "exhaustion of the current administrative procedure would be futile" and further

---

an interpretation of Section 405(g) according to which Congress is understood not to have intended the statutory requirement to apply in certain types of cases, notwithstanding that the agency contends otherwise.

- 12 -

delays would result in "undue hardships, dire need and undue suffering."

The plaintiffs also argued that, insofar as the exhaustion requirement would otherwise bar their claims from being heard in federal court, the plaintiffs were still entitled to bring their suit in federal court pursuant to Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000). Illinois Council held that where Section 405(h) "would not simply channel review through the agency, but would mean no review at all" by the federal courts of the agency action, then Section 405(h)'s jurisdictional bar does not apply. Id. at 19.

The District Court granted the government's motion to dismiss for lack of subject matter jurisdiction (and thus did not address whether the complaint failed to state a claim). The District Court reasoned that the plaintiffs' claims arose under the Social Security Act, and thus that the plaintiffs had to meet the presentment and exhaustion requirements in order to comply with the requirements of Section 405(g). The District Court concluded that, although the plaintiffs complied with the presentment requirement, the plaintiffs did not satisfy the exhaustion requirement because the plaintiffs had neither obtained a decision from an ALJ nor appealed from that decision to the SSA's Appeals Council.

As for the possibility of a judicial waiver of the exhaustion requirement, the District Court stated that the plaintiffs "have not asked the Court to waive the . . . requirement, nor does the Court see a reason to do so."  Finally, the District Court ruled that the Illinois Council exception to Section 405(h)'s jurisdictional bar, encompassing situations where channeling the claims through the agency would result in "no review at all," did not apply.  529 U.S. at 19.

The plaintiffs now appeal the District Court's jurisdictional ruling.  The plaintiffs bear the burden of proving subject matter jurisdiction.  Aversa, 99 F.3d at 1209.  Where, as here, the facts are largely uncontested and the issue is a "nearly pure" question of law, we review de novo a district court's decision to grant the motion to dismiss for lack of subject matter jurisdiction.  Valentín v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

**II.**

We begin with the plaintiffs' contention that their federal court claims do not "arise under" the Social Security Act and are therefore not subject to the jurisdictional limitations set forth in Section 405(h).  We do not find this contention to be persuasive.

In Weinberger v. Salfi, 422 U.S. 749 (1975), the Supreme Court held that a claim for relief in a lawsuit "arise[s] under"

the Social Security Act where "the Social Security Act . . . provides both the standing and the substantive basis for the presentation of [the plaintiffs'] . . . contentions." Id. at 760-61. There, the plaintiffs sought the payment of Social Security survivors insurance benefits that had been denied to them on the basis of a statutory restriction that they alleged violated their constitutional rights. Id. at 753-56.

The Supreme Court held that the plaintiffs' claims in their complaint did "arise under" the Social Security Act. Id. at 760-61. The Court explained that the plaintiffs not only sought the provision of Social Security benefits as relief but also would have had no standing or substantive basis for their claims -- including their constitutional claims -- absent the request for benefits under the Social Security Act. Id.

Many years later, in Illinois Council, the Supreme Court elaborated on its holding from Salfi. In Illinois Council, a group of nursing homes challenged the process by which the federal government imposed sanctions on nursing homes that participated in Medicare for the failure of such nursing homes to meet certain performance standards. 529 U.S. at 6-7. The nursing homes contended, among other things, that the process the federal government used for sanctioning nursing homes violated both the federal constitutional guarantee of due process of law and the Medicare statute. Id. at 7.

The Court held that both the plaintiffs' constitutional claims and their statutory claims arose under the Medicare Act. Id. at 11-15. The Court explained that Section 405(h)'s phrase "any claim arising under" the Social Security Act -- or the Medicare Act, which incorporates Section 405(h) -- clearly covers

> a typical Social Security or Medicare benefits case, where an individual seeks a monetary benefit from the agency (say, a disability payment, or payment for some medical procedure), the agency denies the benefit, and the individual challenges the lawfulness of that denial . . . irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds.

Id. at 10. The Court then acknowledged that the nursing homes were bringing a slightly different kind of claim -- a claim where "one who might later seek money or some other benefit from (or contest the imposition of a penalty by) the agency challenges in advance . . . the lawfulness of a policy, regulation, or statute that might later bar recovery of that benefit (or authorize imposition of the penalty)." Id.

Nevertheless, the Court held that its precedent, including Salfi, "foreclose[d] distinctions based upon the 'potential future' versus the 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus 'noncollateral' nature of the

issues, or the 'declaratory' versus 'injunctive' nature of the relief sought." Id. at 13-14. Instead, the Court concluded,

> [c]laims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h).

Id. at 14.

In this case, the plaintiffs' claims that the agency unlawfully terminated their benefits without adequate notice of the evidence of fraud or an opportunity to challenge that evidence are, like the claims in Illinois Council, predicated on the plaintiffs' potential future entitlement to those benefits. For that reason, the plaintiffs' claims here, like those in Illinois Council, "arise under" the Act because the Act provides "the standing and the substantive basis" for the claims they bring in their suit. Id. at 12 (quoting Salfi, 422 U.S. at 760-61).

In challenging this conclusion, the plaintiffs contend that their claims do not "arise under" the Social Security Act because the claims are based, in part, on their constitutional right to due process and not merely on the agency's purported violations of the Act and its implementing regulations. But Salfi

- 17 -

and Illinois Council make clear that the fact that the plaintiffs have a constitutional basis for their claims does not change the fact that those claims "arise under" the Act.  See Ill. Council, 529 U.S. at 11-14; Salfi, 422 U.S. at 760-61.  What matters is that those claims are predicated on -- and thus "arise under" -- the plaintiffs' interest in obtaining the benefits to which they contend they are entitled under the Act.

### III.

Because the plaintiffs' claims "arise under" the Social Security Act, those claims may be heard in federal court only if the plaintiffs are in compliance with Section 405(g).  The District Court determined, and the parties agree, that although the relevant claims have been presented to the SSA, the plaintiffs have neither exhausted their administrative remedies nor obtained a waiver from the agency.

Although the plaintiffs contend that they are entitled to a judicial waiver of the exhaustion requirement, before diving into that issue, we first consider whether we even need to address judicial waiver at all.  As we explained above, if the plaintiffs can show that subjecting their claims to the requirement of Section 405(g) would result in "no review at all," as they contend is the case, then there is no need for the plaintiffs to show that their claims qualify for a judicial waiver of exhaustion.  Ill. Council,

529 U.S. at 19. And so we first address the merits of this alternative ground for reversing the jurisdictional ruling below.

The plaintiffs contend that the agency's choice to bar them from presenting evidence challenging the agency's determination of fraud in their individual cases prohibits them from developing a full evidentiary record that would allow a federal district court to meaningfully review the agency's decision. As a result, the plaintiffs argue that, insofar as they are unable to meet the exhaustion requirement of Section 405(g), it does not matter because the result would be "no review at all" of the agency's fraud determination. They thus assert that the exception to Section 405(g)'s exhaustion requirement set forth in Illinois Council applies here. We do not agree.

In Illinois Council, the Supreme Court rejected the very line of reasoning on which the plaintiffs rely. There, the Court explained that:

> The fact that the agency might not provide a hearing for [a] particular contention . . . is beside the point . . . . After the action has been so channeled [through the agency], the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has . . . , where necessary, the authority to develop an evidentiary record.

Id. at 23-24 (citations omitted). The plaintiffs do not satisfactorily explain why the opportunity to develop an evidentiary record for the first time in federal district court,

after exhaustion, regarding the agency's determination of fraud, would be insufficient.  Thus, we reject the plaintiffs' argument that applying the jurisdictional bar of Section 405(h) would result in no judicial review at all, because we have no reason to think that review under Section 405(g) will not offer them an adequate opportunity to present their claims in federal court following the exhaustion of the administrative review process.

## IV.

With the "no review at all" exception out of the way, we now confront the judicial waiver of exhaustion issue, which provides the last route by which the plaintiffs may show that, notwithstanding their failure to have exhausted their claims in the manner Section 405(g) otherwise requires, there is jurisdiction for a federal district court to hear their suit.  The District Court concluded that the plaintiffs had not sought a judicial waiver of exhaustion and that, in any event, there was no reason to grant such a judicial waiver.

In challenging the District Court's jurisdictional ruling, the plaintiffs take aim at each of the District Court's determinations regarding their entitlement to a judicial waiver of exhaustion.  And, notwithstanding the government's contrary contention on appeal, the plaintiffs do appear to have made the judicial waiver argument below in their memorandum in opposition to the government's motion to dismiss.  In fact, the government's

own reply memorandum to that filing by the plaintiffs recognized as much, in stating that the "[p]laintiffs . . . assert that the Act's administrative exhaustion requirement should be waived because exhaustion would be futile." Thus, even assuming our review of a finding as to waiver is only for clear error, we hold that the District Court clearly erred in deeming the request for a judicial waiver waived.

The government nevertheless argues that, if we are "inclined to overlook the forfeiture," we should not reverse the decision below. Instead, the government contends, we at most should remand to the District Court for it to consider the issue of judicial waiver of exhaustion in the first instance. But, the District Court appears to have passed on the merits of that issue below by concluding that, insofar as the plaintiffs had made a request for a judicial waiver of exhaustion, it would be denied on the ground that there was no reason to grant such a judicial waiver in this case. In light of that ruling on the merits, we thus do not see why there is any necessary reason to remand, as the government agrees that the question whether a request for a judicial waiver of exhaustion must be granted is a legal one that we review de novo. See Wilkerson v. Bowen, 828 F.2d 117, 119 (3d Cir. 1987).

We thus turn to the merits of the judicial waiver issue, so that we may decide whether, on the record developed below, there

is any reason to disturb the District Court's apparent conclusion that no judicial waiver of exhaustion is warranted. We begin by laying out the precedent that guides us in undertaking that inquiry. We then apply that precedent to the facts of the present case.

**A.**

The Supreme Court first recognized that a court may waive the exhaustion requirement under Section 405(g) without the Secretary's consent in Eldridge. There, the Court explained that judicial waiver of exhaustion is proper "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." 424 U.S. at 330.

In Eldridge, the plaintiff, without first exhausting his administrative remedies, had brought a constitutional claim in federal district court in which he contended that he was entitled to an evidentiary hearing prior to the termination of his disability benefits. Id. at 324-25. The Court waived the exhaustion requirement in that case for two reasons. Id. at 330-32.

First, the Court explained that the plaintiff's claim was "entirely collateral to his substantive claim of entitlement," id. at 330, given that it pertained to the process to which he alleged he was constitutionally entitled, rather than to a claim

to the benefits themselves.  See id. at 333.  The Court reached that conclusion even though the plaintiff's complaint requested a reinstatement of benefits pending an evidentiary hearing.  See id. at 325.

Second, the Court concluded that the plaintiff could show "at least a colorable claim" that an erroneous termination would irreparably harm him.  Id. at 331.  In reaching that conclusion, the Court pointed to the plaintiff's allegation concerning "his physical condition and dependency upon the disability benefits."  Id.

The Supreme Court next elaborated on the circumstances in which judicial waiver of the exhaustion requirement under Section 405(g) is appropriate in Bowen v. City of New York, 476 U.S. 467 (1986).  And, once again, as in Eldridge, the Court found the conditions for judicial waiver of the exhaustion requirement satisfied.  See id. at 482-86.

In City of New York, a class of plaintiffs challenged the SSA's unpublished policy of presuming, in determining eligibility for disability insurance benefits, that people with certain types of disabilities were capable of performing unskilled labor.  Id. at 473.  The class alleged that the policy violated the Constitution, the Social Security Act, and certain regulations.  Id.  The district court had certified a class to

- 23 -

challenge the policy and that class included claimants who had not exhausted their administrative remedies.  Id. at 475.

The Supreme Court held that the district court did not err by waiving the exhaustion requirement with respect to those class members.  Id. at 486.  The Court reasoned, first, that the plaintiffs' claims were collateral to their substantive claim for benefits, because "[t]he class members neither sought nor were awarded benefits in the District Court, but rather challenged the Secretary's failure to follow the applicable regulations."  Id. at 483.  The Court reasoned, second, that the plaintiffs might be irreparably injured if forced to exhaust their administrative remedies because the district court had found that "[t]he ordeal of having to go through the administrative appeal process may trigger a severe medical setback."  Id.

Importantly, however, City of New York explained that those two factors from Eldridge -- concerning the collateral nature of the claim and the irreparable harm the plaintiff faces -- are not the only considerations in assessing whether to permit a judicial waiver of exhaustion.  After noting Eldridge's admonition that the exhaustion doctrine is "intensely practical," the Court in City of New York explained that "[t]he ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the Eldridge factors, but should also be guided by

the policies underlying the exhaustion requirement." Id. at 484 (quoting Eldridge, 424 U.S. at 331 n.11).

The Court in City of New York then undertook an "intensely practical" inquiry in which it determined that the policies underlying the exhaustion requirement weighed in favor of immediate review. Id. The Court determined in this regard that the district court had not prematurely interfered with the agency's processes because, although it took jurisdiction of the case, it ordered "simply that the claims be reopened at the administrative level." Id. at 485. The Court also observed "unique circumstances" in the case that warranted immediate review. Id. Specifically, the plaintiffs challenged a "systemwide" policy -- rather than a deviation in the agency's application of its regulations to individual cases -- that did not depend on the particular facts of the underlying cases and which policy the agency seemed unlikely to abandon in light of the "pressure" the agency placed on state agencies to enforce the policy. Id. In addition, the Court noted that the agency's policy was "unrevealed" insofar as the agency had not disclosed it to claimants. Id.

Both before and after City of New York, we have explained more generally that the exhaustion doctrine serves the following important interests:

> [Exhaustion] allows the agency to develop a
> factual record, to apply its expertise to a
> problem, to exercise its discretion, and to

correct its own mistakes, all before a court
will intervene. Insofar as specialized
administrative understanding is important,
the doctrine thereby promotes accurate
results, not only at the agency level, but
also by allowing more informed judicial
review. By limiting judicial interruption of
agency proceedings, the doctrine can encourage
expeditious decision making. Insofar as
Congress has provided that an agency will
decide a matter in the first instance, to
apply the doctrine normally furthers specific
Congressional intent. And, as a general
matter, the doctrine promotes a sensible
division of tasks between the agency and the
court: litigants are discouraged from
weakening the position of the agency by
flouting its processes, while court resources
are reserved for dealing primarily with those
matters which could not be resolved
administratively. Thus, the doctrine serves
the interests of accuracy, efficiency, agency
autonomy and judicial economy.

Doyle v. Sec'y of Health & Human Servs., 848 F.2d 296, 300 (1st

Cir. 1988); Wilson v. Sec'y of Health & Human Servs., 671 F.2d

673, 677-78 (1st Cir. 1982).[6]

Doyle is our only post-City of New York precedent that

squarely addresses the circumstances in which it may be proper to

permit a judicial waiver of exhaustion under Section 405(g).

There, we concluded, in dicta, that City of New York establishes

that

---

[6] Although Wilson predates City of New York, there
-- consistent with what City of New York would later require -- we
applied the two Eldridge factors in our waiver analysis and also
considered whether the interests underwriting the exhaustion
requirement would be served by insisting on exhaustion in that
case. See Wilson, 671 F.2d at 677-79.

> when a plaintiff attacks the lawfulness of an
> important 'systemwide' agency policy (say, a
> constitutional challenge to a policy
> disqualifying a large class of potential
> Social Security recipients), the Supreme Court
> has held that the agency <u>must</u> waive its
> exhaustion requirements. In that sort of case
> exhaustion serves little purpose; the agency's
> policy is well-established and unlikely to
> change; agency expertise is not particularly
> likely to help the court; and, at the same
> time, to insist upon exhaustion of agency
> procedures might well physically harm a
> plaintiff needing benefits.

848 F.2d at 300 (citing <u>City of New York</u>, 476 U.S. at 482-87).

In <u>Doyle</u> itself, however, we did not ultimately permit a judicial waiver of exhaustion. <u>Id.</u> There, a physician who had been sanctioned with a ban from treating Medicare patients claimed that the sanctioning body had not properly applied the factors that, by regulation, it was required to consider in recommending such a sanction to the agency. <u>Id.</u> at 299. In declining to waive the exhaustion requirement for the physician, we pointed to three features of the case. <u>See</u> <u>id.</u> at 300.

We noted that the plaintiff was not challenging a systemwide policy, as had been the case in <u>City of New York</u>. <u>Id.</u> Rather, the plaintiff was challenging only how the relevant regulatory factors were weighed in his particular case.

We also explained that there was no reason to think that the agency had a "closed mind" on the matter. <u>Id.</u> We explained

- 27 -

in that regard that it was not a "long-standing policy that [was] under attack."  Id. at 300-01.

Finally, we reasoned that the court would benefit from the exercise of agency expertise that would be brought to bear through the playing out of the full administrative review process, as well as from the complete administrative record that would be developed through that process.  Id. at 300.  We noted that such a process would permit the agency to bring its expertise to bear on the issues of both how the regulatory factors ought to be weighed under the agency's own regulation and whether any deviation from the norm had prejudiced the physician.  Id.

**B.**

It is against this legal background that we must assess whether the plaintiffs in this case are entitled to have the exhaustion requirement waived judicially.  As in Eldridge and City of New York, their claims are collateral to the claim for benefits, and we may assume that they have sufficiently alleged irreparable harm.[7]  However, the practical considerations underlying the

_____

[7] Because neither factor was present in Wilson, that precedent does not control here, despite the government's reliance on it. See 671 F.2d at 679 ("[T]his case neither involves a 'constitutional challenge entirely collateral to . . . [a] substantive claim of entitlement' . . . nor some special 'damage' caused by failure to give a predetermination hearing 'not recompensable through retroactive payments.'" (quoting Eldridge, 424 U.S. at 330, 331)).  Rather, there, the plaintiff sought a one-time refund payment of $173.47, rather than claiming that she

- 28 -

exhaustion requirement that we identified in <u>Doyle</u> would be served by applying that requirement -- rather than its exception -- in the circumstances of this case. Accordingly, we conclude that the District Court correctly concluded that a waiver of that requirement was not warranted.

## 1.

We start with the issue whether the claims that Justiniano and Menéndez bring in federal court are entirely collateral to the claim for benefits that would be the subject of the administrative appeals process that they seek to bypass. Their federal court complaint alleges that the SSA applied an unlawful presumption in the agency's eligibility determination process in terminating their benefits. That presumption was that the medical evidence in the plaintiffs' applications was fraudulent simply because the evidence was provided by a physician who had been convicted of fraud with respect to other, "unrelated" applications for disability benefits.

Given the nature of that contention, a win for the plaintiffs in federal court would not necessarily entitle them to benefits. Rather, a win in federal court would necessarily provide them with only the process for having determined their eligibility for benefits to which they claim they are legally entitled.

---

was entitled to particular process rights going forward, without which there would be a risk of irreparable harm. <u>Id.</u> at 674-77.

Accordingly, their claims in federal court are entirely collateral to their claim for benefits, just as were the claims in federal court that were at issue in Eldridge and City of New York.[8]

Of course, the plaintiffs have asked, among other relief, for a reinstatement of benefits. But that feature of their suit does not require -- as the government contends -- a different conclusion regarding whether their claims are collateral to a substantive claim of entitlement to those benefits. Like in Eldridge, 424 U.S. at 325, the plaintiffs have simply sought a reinstatement of benefits pending the completion of the redetermination process to which they claim they are entitled.

---

[8] We reject the government's contention that, on this factor, the case is instead more like Ringer. The plaintiffs in Ringer sought a declaration that a particular surgical procedure was reimbursable under the Medicare Act and an injunction compelling such reimbursement. 466 U.S. at 610-11. The Court held that, at bottom, the plaintiffs' claims were not wholly collateral to a claim for benefits. Id. at 618. The Court so held even though -- in its separate analysis of the presentment requirement -- it observed that "[a]rguably" the plaintiffs raised procedural objections both to the agency's "decision to issue a generally applicable rule rather than to allow individual adjudication" and to the agency's alleged failure to comply with the Administrative Procedure Act in issuing that rule. Id. at 614. But, "ALJs were consistently ruling in favor of individual . . . claimants" in individual adjudication before ALJs who were not bound by the rule. Id. at 607-08. Ringer is therefore unlike Eldridge or City of New York, in which there was no similarly foregone conclusion that the plaintiffs would obtain the benefits they sought if their procedural challenges succeeded. And, on that score, the case at hand is more like Eldridge and City of New York, rather than Ringer, given that there is no dispute that the policy the plaintiffs challenge on "procedural" grounds here is hardly the only impediment to their establishing their entitlement to benefits.

They are in no way seeking to adjudicate their substantive eligibility for benefits in their federal suit.

Finally, the government is also wrong to contend that the plaintiffs' claims in federal court are not entirely collateral to their claim for benefits because the plaintiffs assert that the SSA violated the Social Security Act and its implementing regulations. The Court made clear in City of New York that a claim does not lose its status as being entirely collateral to a claim for benefits just because that entirely collateral claim asserts a violation of the Social Security Act or its implementing regulations. 476 U.S. at 483.

**2.**

The plaintiffs also have arguably presented a colorable claim that they will be irreparably harmed absent a judicial waiver of exhaustion. They allege that they depended on the disability benefits for income to pay, among other things, for medical care and water and electric services, and that they have now become dependent on family members to pay for such services. Thus, because they allege that they are no longer financially self-sufficient as a result of the loss of income from their disability benefits, they may be unable to access those essential services during the time it would take them to exhaust the administrative remedies available to them, seemingly resulting in irreparable harm.

- 31 -

The Court's observation in Illinois Council that an "occasional individual, delay-related hardship" may be an expected price of Section 405(h)'s exhaustion requirement, 529 U.S. at 13, does not appear to undermine the conclusion that Justiniano and Menéndez face irreparable harm, as the government contends it does. In Illinois Council, the Court was justifying the presentment requirement, which the parties agree is satisfied in this case, not the irreparable harm showing in the context of a judicial waiver of exhaustion. Moreover, the risk of forgoing access to essential medical, water, and electric services is hardly the type of "occasional individual, delay-related hardship" that we think the Court had in mind in justifying a routine feature of the administrative process. Id. Therefore, with respect to the judicial waiver analysis, we may assume that retroactive payment would not be a sufficient remedy for the harm the plaintiffs may incur in the meantime, if their claims are ultimately successful.

Moreover, to the extent that a showing of irreparable harm must necessarily rest on a showing of at least a colorable claim of ultimate success on the merits, the plaintiffs arguably have made that showing, too. In the very cases to which the government points as having recently presented similar challenges to the SSA's redetermination procedures, we note that the plaintiff in at least one of those cases succeeded on her constitutional

claim. See Hicks v. Colvin, 214 F. Supp. 3d 627, 633-46 (E.D. Ky. 2016).

**3.**

Nevertheless, we still must consider the practical considerations that bear on waiving the exhaustion requirement judicially. We must do so in order to assess whether the policies underlying the exhaustion requirement would be undermined by so waiving that requirement. And, although some practical considerations weigh in favor of the plaintiffs' request for a judicial waiver of that requirement, ultimately the plaintiffs fail to carry their burden to show that a judicial waiver of exhaustion is warranted.

In trying to make the case that there is no practical reason to require exhaustion, the plaintiffs argue that, like in City of New York, they challenge a "systemwide" agency policy and thus not a case-specific agency decision that necessarily may be properly evaluated only after the agency has had a full opportunity to assess it. 476 U.S. at 485. To be sure, the plaintiffs' suit challenges only how the systemwide policy has been applied to applications for benefits cases that have been affected by a particular fraud investigation. But hundreds of disability benefits cases have been affected by the application of that systemwide policy to that fraud investigation, and the legal basis for the challenge itself is applicable to the systemwide policy

rather than to the policy's specific application to the particular fraud investigation. In addition, the government does not dispute the plaintiffs' contention that they challenge a systemwide policy.

Relatedly, the plaintiffs argue that exhaustion would be "futile" because the policies underlying the exhaustion requirement would not, in fact, be served here for an additional reason. Specifically, the plaintiffs point out that, since this litigation began, the agency has formalized the policy that they challenge. The agency has done so in both its internal manual for adjudicating benefits claims -- the Hearings, Appeals, and Litigation Law Manual ("HALLEX"), § I-1-3-25 -- and two Social Security Rulings. See SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016); SSR 16-2p, 81 Fed. Reg. 13439 (Mar. 14, 2016). Those rulings (albeit not the manual) are binding on the agency. See Sullivan v. Zebley, 493 U.S. 521, 530 n.9 (1990); Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (per curiam). Thus, the plaintiffs contend that, unlike in Doyle, there is good reason to think that the agency has "a closed mind on these matters" at this point. 848 F.2d at 300.[9]

---

[9] On this score, this case is unlike Wilson. There, the agency had not taken "a final position" on the plaintiff's challenge to a policy whereby, under the agency's interpretation of its regulations, representative payees for recipients of supplemental security income benefits were liable for overpayments of benefits. 671 F.2d at 678. The policy was included in the

- 34 -

The government, again, does not suggest otherwise. And we can see why. Both parties agree that, under the agency's formalized policy, the administrative appeal process in the plaintiffs' cases would be limited to reviewing the remaining medical evidence that the agency has not disregarded as potentially fraudulent.[10] For that reason, administrative review would not appear to provide any occasion for an ALJ or the SSA's Appeals Council to bring expertise to bear on the interpretation of the implementing regulations that the plaintiffs seek to challenge in federal court. Rather, an administrative adjudicator would simply apply those administrative rulings to the case at hand.[11] As a

agency's Claims Manual, but the agency had not otherwise bound itself to the policy. Id. at 675. Thus, we observed that completion of the administrative process "might have led to a narrowing interpretation of the regulations or their revision." Id. at 678.

[10] The reason is that the fraud investigation in this case originated in the SSA's Office of Inspector General, and the agency "will not administratively review information provided by SSA's Office of the Inspector General . . . regarding its reason to believe that fraud was involved in the individual's application for benefits." SSR 16-1p, 81 Fed. Reg. at 13438; see also HALLEX, § I-1-3-25.

[11] We indicated, in dicta, in McDonald v. Secretary of Health & Human Services, 834 F.2d 1085 (1st Cir. 1987), that we were "not necessarily persuaded" that "there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise" through exhaustion, id. at 1091, where the plaintiffs challenged an agency policy that had been formalized in a Social Security ruling. Id. at 1087. We were commenting on the plaintiffs' argument that they did not need to administratively exhaust their claim that what is known as "step 2" in the sequential evaluation used by the Secretary of Health and Human Services to determine eligibility for disability insurance

result, on this score, this case is more like City of New York, in which the Supreme Court reasoned that a federal agency was unlikely to change an unpublished policy because it had been pressuring state agencies to enforce it.  476 U.S. at 485.[12]

Nevertheless, we conclude that, in the circumstances of this case, plaintiffs have failed to meet the burden of showing that exhaustion would not provide sufficient practical benefit. We explained in Wilson that the exhaustion doctrine "encourage[s] expeditious decision making" and that, accordingly, an agency

benefits violated the Social Security Act.  See id.  However, we provided no explanation for why agency expertise might be helpful in that context, and "we expressly [made] no determination of this [issue] one way or the other" because we resolved the appeal on other grounds.  Id. at 1091.  In any event, even if there were an opportunity in the administrative appeals process for the agency to bring its expertise to bear on Justiniano and Menéndez's regulatory claim, as McDonald might suggest, the same would not be true with respect to the plaintiffs' constitutional claim.  And, McDonald did not involve a constitutional claim.  Id.

    [12] The government does seek to distinguish this case from City of New York with respect to practical considerations on the ground that this case does not involve "a claim of a covert policy which, because of its secrecy, undermined the efficacy of normal administrative and judicial review processes."  McDonald, 834 F.2d at 1091 (citing City of New York, 476 U.S. 467).  But Doyle did not indicate that a policy must be covert in order for a judicial waiver to be permissible.  In fact, Doyle suggested otherwise in the passage that we quoted above about when a judicial waiver of the exhaustion requirement must be granted.  See supra at 27 (quoting Doyle, 848 F.2d at 300).  Nor can we see why the rule should be otherwise.  The mere fact that the agency has not hidden the policy under challenge from view in the early stages of the administrative process does not mean that the policies underlying the exhaustion requirement would be served by requiring exhaustion.  That determination must be made with reference to the particular facts at hand in a given case.

should be given "a chance to rectify a litigant's problems and save judicial time and effort." 671 F.2d at 678. In this regard, the government points out that the administrative proceedings will provide each plaintiff with an evidentiary hearing on the remaining medical evidence in their records and that, in seemingly comparable cases, a substantial number of claimants succeeded in obtaining a reinstatement of benefits, notwithstanding the exclusion of evidence deemed by the SSA to be fraudulent. The government thus suggests that the exhaustion of the administrative appeals process may provide the plaintiffs with a restoration of their benefits and, in that way, would not be "futile."[13]

More specifically, the government submitted a declaration by a senior SSA official with its motion to dismiss that described the process by which the SSA is reviewing the

_____

[13] We note that in City of New York, the Court observed that the government "correctly assert[ed] that, had class members exhausted administrative remedies, some might have received benefits despite the illegal policy. . . . Such observations, however, merely serve to remind us why exhaustion is the rule in the vast majority of cases; they do not aid the Court in deciding when exhaustion should be excused." 476 U.S. at 485-86. We do not read this passage to indicate that, contrary to our view in Wilson, 671 F.2d at 678, the likelihood of the agency process mooting out the plaintiffs' claim -- either by disqualifying the plaintiff from receiving benefits for an unrelated reason or by granting benefits to the plaintiff -- has no role to play in the analysis of whether judicial waiver of the exhaustion requirement is warranted. Rather, we read it to mean that the mere possibility of the agency process mooting out the plaintiffs' claim does not in and of itself counsel in favor of or against judicial waiver of exhaustion, but that the relative probability of it might.

benefits termination decisions connected to the same fraud investigation at issue in this case. The declaration indicated that, of the more than 2,000 administrative appeals, 423 hearings had been held and the claimants received favorable decisions in 145 cases. The government also states in its appellate brief that of a narrower group of 1,280 individuals who, like the plaintiffs, originally had benefits awarded by the Puerto Rico Disability Determination Services (as opposed to by an ALJ on review of an unfavorable DDS decision), 100 hearings had been held, 56 decisions had been issued, and 43 of those decisions were favorable to the claimants. That means, as the government points out, that a "majority" of the issued decisions have been favorable among this narrower group.

Of course, we do not know the exact posture of the cases in which claimants obtained a reinstatement of benefits through their administrative appeals. And the plaintiffs did argue below that their administrative appeals were assigned to a different administrative hearing office than the one from which these statistics are drawn. But the plaintiffs bear the burden of showing that they are entitled to a judicial waiver of exhaustion, and they have made no argument that they would not be able to obtain the benefits to which they claim they are entitled through the normal course of their administrative appeals. Given that, as the case comes to us, the plaintiffs' chances of obtaining benefits

through the administrative process appear to be substantial, we do not see how we could waive the requirement that would give the agency an opportunity "to rectify" the problem by giving them the benefits that were terminated.  Id.  Thus, we hold that judicial waiver of the exhaustion requirement is not warranted on these facts.

## V.

For the foregoing reasons, the judgment of the District Court is **affirmed**.